UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

GLEN R. JEFFERY, JR.,

           Plaintiff,

v.

           Case No. 19-cv-1212-pp

TRANSPORT OFFICER FUENTEZ, *et al.*,

           Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING AS MOOT PLAINTIFF'S MOTION FOR EXPEDITED SCREENING OF COMPLAINT (DKT. NO. 13)**

---

Glen Jeffery, who is confined at Green Bay Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights when they injured him by using a power hose to wash down the passenger area of the transport van he was in. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens his complaint and denies as moot his motion to expedite screening, dkt. no. 13.

**I.   Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When

1

funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 21, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $7.31. Dkt. No. 4. The court received that fee on October 7, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.   Screening the Complaint**

   A.   Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). The complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must contain enough facts, accepted as true, to "state a

2

claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff alleges that on or around September 10, 2018, Officer Fuentez and Transport Officer #2 picked him up at the Waupun Correctional Institution (where he was then in custody) to take him to the Milwaukee County Jail for a court appearance. Dkt. No. 1 at ¶7. On the way, the transport van stopped at Dodge Correctional Institution to drop off some inmates who were returning from the Milwaukee County Jail; while at Dodge, the plaintiff and another inmate asked Fuentez and Officer #2 to "do something about the strong smell of feces in the van which was making [the] plaintiff and the other

inmate gag." Id. at ¶8. The officers said they couldn't roll down the windows and would "try to take care of the problem" once they reached Dodge Correctional Institution.[1] Id. at ¶9.

When the van arrived at Dodge, the plaintiff and the other inmate were placed in Dodge's holding cells; while they were there, Dodge Captain John Doe gave Fuentez a power-wash hose. Id. at ¶10. The plaintiff says that Fuentez "chose" to power-wash the passenger section of the van but "decided not to remove the excessive water from the seats, ceiling and floor surfaces." Id. at ¶11. When the plaintiff and the other inmate were returned to the van, the plaintiff saw the "excess water" and complained "to both the transportation officer and DCI Captain John Doe about the van no longer being safe for travelling and requested that the amount of water that had been sprayed in the van be dried up." Id. at ¶12. The plaintiff alleges that Doe gave Fuentez a hand towel "that was subsequently used to perfunctorily used to wipe the seat areas and nothing more in the van." Id. at ¶13. He says that the "G4S officers" and Doe ordered the plaintiff and the other inmate to get into the van or be subject to prison discipline for being disruptive and disobeying orders." Id. The plaintiff says that Fuentez also told the plaintiff that if he didn't get back in the van,

---

[1] The chronology is confusing; the plaintiff makes it sound as if the van stopped at Dodge on the way to Milwaukee County, but then says that the Dodge stop was for the purpose of dropping off inmates who'd come *from* Milwaukee County and talks about the officers trying to correct the problem once they reached Dodge. It is not clear whether the events the plaintiff describes took place on the trip *to* Milwaukee from Waupun or on the trip *back* to Waupun from the Milwaukee County Jail, after the plaintiff's court appearance.

4

Fuentez would tell the sheriff's office in Milwaukee County that the plaintiff was being "problematic" and get him put in segregation. Id. at ¶14.

The plaintiff says that he explained again that the water in the van wasn't safe for traveling "such a long distance from DCI to the county jail in Milwaukee," but nonetheless, he got back to the van. Id. at ¶15. The plaintiff says that at this point, Fuentez was angry and frustrated, so instead of strapping him and the other inmate in with seatbelts, Fuentez "just slammed the door, mumbled something about not being on schedule and went to the front of the van and sat in the passenger seat." Id. The plaintiff and the other inmate were in mechanical restraints, which included a waist belt attached to handcuffs and leg irons; the plaintiff says that neither would have been able to put themselves into the seatbelts. Id. at ¶16.

As the van left Dodge, the driver—G4S Officer #2—"accelerated at a rapid speed" which jerked the plaintiff and the other inmate "forward and then backwards." Id. at ¶17. The plaintiff says that when the van arrived in the sally port, the officer "chose to slam on the brakes which caused [the plaintiff] to actually go airborn[e] off the seat and collide with the divider between the passenger area of the van and the driver's area of the van." Id. The plaintiff describes himself as being 6'4" and weighing over 300 pounds; he says that he "smacked his head, neck and left deltoid and back areas into the metal divider and seats with such force that [he] was knocked unconscious." Id. at ¶18. The plaintiff says that he was awakened by the screams of the other inmate, and

5

had to be returned to the health services unit at Dodge to be examined. Id. at ¶19.

The plaintiff alleges that defendant RN Jodi Fields examined him "in a superficial manner after informing the defendant of the accident which was confirmed by Defendant Fuentez." Id. at ¶20. The plaintiff says that he "provided the subjective account of having an extreme headache" and "pain in the neck and back," but that Fields chose only to check his vital signs, declared that he was "fine" and cleared him to be returned to the van to be taken to the county jail. Id. at ¶21.

At the Milwaukee County Jail, the plaintiff was assigned to Pod 6A on the sixth floor, where he told the assigned deputy (not a defendant) that he had just been in a car accident and "was feeling pretty bad." Id. at ¶22. The plaintiff alleges that the next day (September 11, 2018), after the first deputy "chose to take no action," the plaintiff told Deputy Bilgeback[2] of the accident and the injuries he'd sustained and asked for a grievance form. Id. at ¶23. The plaintiff asserts that Bilgeback "chose to evade the issue," saying that he didn't think they had any grievance forms on the Pod and that if the plaintiff felt bad, he shouldn't be worried about filing grievance forms but should be in his cell resting up because "'rest is healing' or words to that effect." Id. at ¶24. The plaintiff says that later that day, Bilgeback told the plaintiff that he would not be housed at the county jail much longer. Id. at ¶25. The plaintiff says that he

---

[2] The plaintiff spells this defendant's name "Bilgebach" in the caption of the complaint, but "Bilgeback" in the body.

spoke to defendant Ehrmann and again explained the accident and his injuries, asking Ehrmann for grievance forms. Id. He says that Ehrmann "chose not to provide" him with the forms. Id.

Around 7:00 p.m., defendant Farracon, a lieutenant at the jail, conducted a round on Pod 6A and the plaintiff reported the accident to him, again asking for grievance forms. Id. at ¶26. The plaintiff says that Farracon told the plaintiff that G4S doesn't work for the jail, or something like that, and that the transport company might have its own grievance process but that Farracon didn't know what it was or how to access it. Id. at ¶27.

Around April 15, 2019, the plaintiff filed a complaint with the internal affairs division of the Milwaukee County Jail and G4S Transportation Services about the accident and his injuries. Id. at ¶28.

For relief, the plaintiff seeks an order enjoining G4S Transport Services from performing any transportation contract that involves taking state prisoners from a state facility to the county jail, an order requiring the G4S officers to use seat belts on prisoners, a declaration that his rights were violated and compensatory and punitive damages. Id. at ¶¶42-46.

C. Analysis

The Eighth Amendment, as applied to the states through the Fourteenth Amendment, requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that

7

risk." Perez v. Fenoglio, 792 F.3d 768, 776–77 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837). "The deliberate indifference standard reflects a mental state somewhere between the culpability poles of negligence and purpose, and is thus properly equated with reckless disregard." Id. Mere negligence is not enough to state a claim for deliberate indifference. Farmer, 511 U.S. at 835.

"In general, failure to secure a seatbelt, although unwise, is not a substantial risk of harm that rises to the level of a constitutional violation." Williams v. Wis. Lock & Load Prisoner Transports, LLC, No. 15 C 8090, 2016 WL 4124292, at *3 (N.D. Ill. Aug. 3, 2016). The Seventh Circuit has noted that "[n]either the Supreme Court nor [the Seventh Circuit] has ruled that transporting an inmate without a seatbelt creates an intolerable risk of harm." Dale v. Agresta, 771 F. App'x 659, 661 (7th Cir. 2019). It further notes that other circuits have concluded that, "[w]ithout reckless driving or other exacerbating circumstances, failing to seat-belt a shackled inmate does not pose a substantial risk of serious harm." Id.

The plaintiff has alleged more than failure to secure his seat belt. He has alleged that Officer Fuentez and "Transport Officer #2" failed to clean up water in the transportation van, failed to secure his seatbelt, drove recklessly and, upon arriving in the Milwaukee County Jail sally port, slammed on the brakes, causing him to go airborne and crash into a metal divider. If Fuentez and Officer #2 had been employees of the Wisconsin Department of Corrections, the plaintiff's allegations would be sufficient to state a claim that they knew of a substantial risk to the plaintiff's safety but disregarded it.

But the plaintiff alleges that Fuentez and Officer #2 worked for a private company called G4S. "Most defendants under § 1983 are public employees, but private companies and their employees can also act under color of state law and thus can be sued under § 1983." Shields v. Ill. Dep't of Corr., 746 F.3d 782, 789 (7th Cir. 2014) (citations omitted). "A private actor may be sued under § 1983 only if the private actor's conduct is 'fairly attributable to the state.'" Rappe v. Unknown Train Conductor, No. 18-cv-6172, 2020 WL 1166179, at *2 (N.D. Ill. Mar. 11, 2020) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 923-24 (1982)).

> Private action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights; where the state compels the discriminatory action; when the state controls a nominally private entity; when it is entwined with its management or control; when the state delegates a public function to a private entity or when there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself.

Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 815-16 (7th Cir. 2009) (source citations omitted).

The court will assume, for screening purpose only, that Fuentez and Officer #2 were acting under color of state law when they transported the plaintiff to the Milwaukee County Jail and will allow the deliberate indifference claim against them to proceed. The plaintiff will need to use discovery to find out whether they were state actors at the time of the incident and whether they are proper defendants in this suit.

The court will dismiss the remaining defendants. The plaintiff alleges that Dodge Correctional Captain Doe gave Fuentez the power wash hose, which

9

Case 2:19-cv-01212-PP-NJ    Filed 10/20/20    Page 9 of 15    Document 14

he says "contributed to the subsequent accident." Dkt. No. 1 at 7, ¶7. He also says that Doe "decided to clear the plaintiff to return to the van" and did not "instruct, inform or otherwise dried up prior to leaving a Wisconsin DOC facility," and he says that this subjected him to "unreasonably safe conditions." Id. at ¶¶37-38. The plaintiff has not explained how the water in the van contributed to the accident or his injuries. When the plaintiff complained to Doe about the water, Doe gave Fuentez a hand towel with which to wipe it up. The plaintiff says that Fuentez did only a "perfunctory" job but does not say whether Doe knew that. Even if he did, it is not clear how Doe could have known or foreseen that Fuentez and Officer #2 would not strap the plaintiff in with a seatbelt, would drive recklessly or would slam on the brakes upon arriving in Milwaukee. The plaintiff has not stated a deliberate indifference claim against Doe.

The plaintiff asserts that despite his description of his injuries, Nurse Fields examined him and "chose to clear" him to continue traveling with the same G4S transportation officers "and chose not to issue any directive to have the van cleared of water to further avoid any accident involving the transportation officers, plaintiff and the same unsafe vehicle." Dkt. No. 1 at 8, ¶5. This claim sounds more like a failure-to-protect, or failure-to-intervene, claim. The plaintiff does not explain how Nurse Fields would have had the authority to "issue a[] directive" to have the van cleared of water. The Seventh Circuit has said that "[p]ublic officials do not have a free-floating obligation to put things to rights . . . ." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir.

10

2009). As with Doe, the plaintiff does not explain how Fields could have known that the G4S officers would not strap the plaintiff in with a seatbelt or would drive recklessly or slam on the brakes.

The plaintiff also implies that he was not satisfied with the "superficial" way Fields conducted his medical exam. This is not enough to support a deliberate indifference claim against a medical professional. "Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation." Tomlinson v. Sciortino, No. 19-cv-58, 2020 WL 5095325, at *2 (E.D. Wis. Aug. 28, 2020). The plaintiff has not stated a deliberate indifference claim against Fields.

The court also will dismiss Deputy Bilgeback, Sergeant Ehrmann and Lieutenant Farracon. The plaintiff's only allegation against these individuals is that they didn't give him grievance forms when he asked. In fact, he does not allege that Bilgeback refused to give him a form. He assumes that Bilgeback was evading his request when Bilgeback said that he didn't believe there were any forms on the pod, and advised the plaintiff to rest and heal. Similarly, he doesn't allege that Farracon refused to give him a form, but says that Farracon stated that the G4S officers did not work for the jail and that he didn't know how to access their grievance process (or if they had one). He does assert that Ehrmann refused to give him a form.

The plaintiff had no constitutional right to access the grievance process. See Grieveson v. Anderson, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is no Fourteenth Amendment substantive due-process right to an inmate

11

grievance procedure). Even if all three defendants refused to give the plaintiff grievance forms and "as a practical matter the grievance process [was] so ineffective as to be unavailable to [the plaintiff], the only consequence is that he is relieved of the duty to exhaust." Delgado v. Godinez, 683 F. App'x 528, 530 (7th Cir. 2017) (quoting Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016)). The plaintiff has not stated a claim against Bilgeback, Ehrmann or Farracon.

### III.    Motion for Expedited Screening of Complaint (Dkt. No. 13)

The court realizes that it took a very long time for the court to screen the plaintiff's complaint. That is a result of the court's heavy case load. Now that the court has screened the complaint, however, the case will move forward. The court will deny the plaintiff's motion as moot.

### IV.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Dodge Correctional Captain John Doe, Deputy Bilgebach, Sergeant Ehrmann, Jodi Fields and Lt. Farracon.

The court **DENIES AS MOOT** the plaintiff's motion to expedite screening of the complaint. Dkt. No. 13.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$342.69** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the

12

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant Fuentez under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Fuentez to file a responsive pleading to the complaint.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Nancy Joseph for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and

13

dispositive motions. After the court enters the scheduling order, the plaintiff can make discovery requests (written questions or requests for documents) on defendant Fuentez to identify the real name of "Transportation Officer #2." Once he knows the real name of "Transportation Officer #2," he should file a motion asking the court to substitute the real name for the current placeholder in the caption. Again, the plaintiff should not serve any discovery requests on Fuentez until *after* the court enters a scheduling order.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders

or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 20th day of October, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**