UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

GLEN R. JEFFERY, JR.,

                Plaintiff,

v.                                     Case No. 19-cv-1212-pp

MANUEL FUENTES
and ANGEL MACIAS,

                Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT (DKT. NOS. 73, 92), DENYING PLAINTIFF'S MOTION TO APPOINT COURT REPORTER (DKT. NO. 78), DENYING DEFENDANTS' MOTION FOR SANCTIONS (DKT. NO. 86), DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 87), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED BRIEF (DKT. NO. 91), DENYING AS MOOT DEFENDANT MACIAS'S MOTION TO QUASH (DKT. NO. 99), DENYING WITHOUT PREJUDICE DEFENDANT FUENTES'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 100), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 101) AND SETTING DISCOVERY AND DISPOSITIVE MOTIONS DEADLINES**

---

The plaintiff, who is incarcerated at Columbia Correctional Institution and representing himself, filed this civil rights case under 42 U.S.C. §1983. Dkt. No. 1. The court screened the complaint under 28 U.S.C. §1915A and allowed the plaintiff to proceed on a claim that defendants Manuel Fuentes and "Transport Officer #2" knowingly disregarded a substantial risk of serious harm to the plaintiff's safety when they transported him in a van from Dodge Correctional Institution to the Milwaukee County Jail for a court appearance. Dkt. No. 14 at 7-9. On May 20, 2022, the court granted the plaintiff's motion to amend the complaint. Dkt. No. 68 at 1. The amended complaint is the operative complaint; it identifies Transport Officer #2 as Angel Macias. Dkt. No.

1

69. On June 13, 2022, defendant Fuentes answered the amended complaint. Dkt. No. 71. Defendant Macias answered the amended complaint on December 6, 2021. Dkt. No. 112. This order addresses several pending motions.[1]

I. **Plaintiff's Motions for Default Judgment (Dkt. Nos. 73, 92)**

On July 22, 2022, the court received from the plaintiff a motion for default judgment against Macias. Dkt. No. 73. He says that Macias did not answer the complaint within sixty days of the court's May 20, 2022 order granting the plaintiff's motion to amend the complaint. Id. at 1-2. On September 26, 2022, the court received from the plaintiff another motion for default, in which he reiterates that Macias has not filed an answer. Dkt. No. 92.

Federal Rule of Civil Procedure 55 states in relevant part:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure to shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). But before a party may obtain default, or default judgment, that party must have properly served the party against whom the judgment is sought. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §2682 (4th ed. April 2021 Update). A defendant is required to serve an answer "within 21 days after being served with the summons and complaint" or "if it has timely waived service under Rule 4(d),

---

[1] On November 18 and December 5, 2022, the court received from the plaintiff motions to compel discovery, dkt. nos. 105, 110, on December 19, 2022, the court received from the plaintiff a motion to strike the defendants' affirmative defenses, dkt. no. 113, and on December 27, 2022 the court received from the plaintiff a motion asking the court to rule on his motions to compel, dkt. no. 114. These motions are not fully briefed; the court will address them in a subsequent order once the briefing is complete.

within 60 days after the request for a waiver was sent[.]" Fed. R. Civ. P. 12(a)(1)(A)(i) and (ii).

Because the plaintiff is an unrepresented incarcerated individual whom the court allowed to proceed without prepaying the filing fee (*in forma pauperis*), the court ordered the United States Marshals Service to serve the amended complaint on Macias. See Fed. R. Civ. P. 4(c)(3). The clerk's office transmitted the materials to be served to the U.S. Marshals service on May 23, 2022 for service on defendant Macias. Dkt. No. 70. On August 19, 2022, the court again provided the materials to the Marshal for service on defendant Macias. Dkt. No. 83. Macias has filed a motion to quash plaintiff's first set of requests for admission and requests for production[2] in which he explains that on September 30, 2022, Kyle Li of the Marshals Service contacted counsel for Macias to ask if counsel would accept service on Macias' behalf. Dkt. No. 99 at ¶12. Macias also states that on October 7, 2022, counsel for Macias transmitted to the plaintiff a copy of the signed Notice of Waiver of Service, which advised Macias that he had sixty days to answer or otherwise respond to the complaint. Id. at ¶13; Dkt. No. 99-2. Macias is not in default; he filed his answer to the complaint on December 6, 2022, within the sixty days allowed. Dkt. No. 112. The court will deny the plaintiff's motions for default judgment.

## II. Plaintiff's Motion to Appoint Court Reporter (Dkt. No. 78)

The plaintiff has filed a request for the court to appoint a court reporter to take the deposition of defendant Fuentes. Dkt. No. 78. He states this would be helpful to predict the future of these proceedings and aid in possible resolution of the case. Id. at 1.

---

[2] The court addresses Macias' motion to quash below.

There are several ways that the plaintiff may obtain information from defendant Fuentes. Under Fed. R. Civ. P. 31, he may depose Fuentes by written questions, assuming he follows the procedures in that rule. Under Fed. R. Civ. P. 33, he may serve interrogatories on Fuentes, which Fuentes must answer. Under Fed. R. Civ. P. 36, he may serve requests for admission on Fuentes. None of these methods require the plaintiff—or the court—to make arrangements for or pay a court reporter (which is a costly undertaking). None of these procedures require a logistical determination of where the deposition would take place and who would pay for Fuentes' travel, etc. The plaintiff has not given the court any reason why he cannot obtain the information he seeks through written deposition, interrogatories or requests for admission. The court will not order that the deposition of Fuentes be taken, or pay for it to be taken, there are other ways for the plaintiff to obtain relevant information. The court will deny the plaintiff's motion to appoint a court reporter.

### III. Defendants' Motion for Sanctions (Dkt. No. 86) and Plaintiff's Motion for Leave to File Amended Brief in Opposition (Dkt. No. 91)

On August 31, 2022, the defendants filed a motion asking the court to sanction the plaintiff in the form of monetary penalties for attorney's fees and costs or dismissal of the plaintiff's claim under Fed. R. Civ. P. 37(d)(1)(A)(i) for his failure to appear for his August 18, 2022 deposition on. Dkt. No. 86. They state that on August 18, 2022, counsel received a telephone call from a prison official at Waupun Correctional Institution, where the plaintiff was incarcerated, indicating that the plaintiff's current "status" prevented him from sitting for his deposition later that day. Id. at 3. Defense counsel asked for more information and were told only that privacy concerns prevented the official from disclosing more details. Id. The defendants state that they were forced to cancel the deposition and incur the cost of the court reporter. Id. The

4

defendants contend that the plaintiff's failure to appear makes sanctions appropriate under Fed. R. Civ. P. 37(d). Dkt. No. 86 at 3-6. They also argue that the plaintiff's failure to adhere to court instructions makes sanctions appropriate under Fed. R. Civ. P. 37(b). Dkt. No. 86 at at 6-7.

The plaintiff responds that he did not willfully fail to appear for his deposition and that his institution prevented him from attending. Dkt. No. 89 at 3, 5. He states that on August 18, 2022, prison staff placed him on suicide watch against his will. Id. at 4. According to the plaintiff, he had no control over whether to attend his deposition and he asked to be allowed to attend. Id. After filing his response, the plaintiff filed a motion for leave to file amended brief in opposition to the defendants' motion for sanctions, which the court will grant. Dkt. No. 91. This filing includes Department of Corrections documents that support the plaintiff's assertion that he was placed in observation status on August 18, 2022. Dkt No. 91-1 at 7. The defendants did not file a reply brief.

Based on the plaintiff's uncontroverted assertions that he did not willfully fail to appear for his deposition, the court will deny the defendants' motion for sanctions.

### IV. Plaintiff's Motion for Temporary Restraining Order (Dkt. No. 87)

The plaintiff has filed a document stating that he has not received several documents filed in this case (Dkt. Nos. 82-84) because Waupun Correctional Institution did not forward them to Dodge Correctional Institution, where he was temporarily incarcerated when he filed the motion. Dkt. No. 87. The plaintiff states that a Waupun staff member has been harassing him and retaliating against him for actions unrelated to this case, which has had an

5

impact on his ability to litigate it. Id. He moves for a temporary restraining order against Officer Nathan Pach because he fears for his safety. Id. at 1-2.

The court cannot grant the plaintiff temporary injunctive relief because he does not state what specific relief he seeks and, even if he did, the issues he identifies with Nathan Pach are not related to the claim upon which the court allowed him to proceed (the claim regarding the incident in the transport van). See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994); Neuroscience, Inc. v. Forrest, No. 12-cv-813, 2013 WL 6331348 at *1 (W.D. Wis. Dec. 5, 2013). The court will deny the plaintiff's motion for injunctive relief. The court notes that the plaintiff was transferred to Columbia Correctional Institution on November 29, 2022, so while still at a Wisconsin Department of Corrections institution, he presumably no longer has contact with Officer Pach. In addition, the court understands that the plaintiff is incarcerated, and it will continue to allow the plaintiff any reasonable time he requests to litigate the case.

## V. Defendant Macias's Motion to Quash (Dkt. No. 99)

Defendant Macias has filed a motion to quash the plaintiff's first set of requests for admission and for production of documents (which the plaintiff filed with the court on October 5, 2022, Dkt. Nos. 93, 94). Dkt. No. 99 at 1, 3. Macias states that because no Rule 26(f) discovery conference has been held between the plaintiff and Macias, the plaintiff's discovery requests are premature and should be quashed. Id. at 3. In response to Macias' motion, the plaintiff concedes that his discovery requests to Macias were premature, and he withdraws the requests. Dkt. No. 102. Based on the plaintiff's withdrawal of his discovery requests to Macias, the court will deny as moot Macias' motion to quash.

## VI. Defendant Fuentes's Motion for Protective Order (Dkt. No. 100)

Defendant Fuentes has filed a motion for entry of a Health Insurance Portability and Accountability Act (HIPPA) order. Dkt. No. 100. Fuentes states that in this personal injury case, the treating physicians, hospitals and other healthcare providers disclosed by the plaintiff possess protected health information pertaining to the plaintiff and that the lawyers in this case "will require that the parties, their attorneys, and the attorneys' agents, consultants and various witnesses receive and review copies of the Plaintiff's protected health information, which is in the possession of Plaintiff's healthcare providers, and the use of which will be exclusively for this litigation." Id. at ¶¶1-3. Fuentes filed a proposed HIPAA qualified protective order which permits the use and disclosure of protected health information created or received by any covered entity that has provided healthcare to the plaintiff for any purpose. Id. at 2; Dkt. No. 100-1.

The plaintiff filed a response in which he states that does not understand HIPAA law or what a qualified protective order is. Dkt. No. 101 at 1. The plaintiff says that he does not know how to respond, and he asks the court to appoint him a lawyer to represent him.[3] Id. at 2.

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) and its regulations create a procedure for obtaining authority to use protected health information in litigation, including requesting a qualified protective order. 45 C.F.R. §164.512(e); see also Nw. Mem'l Hosp. v. Ashcroft, 362 F.3d 923, 925-26 (7th Cir. 2004); United States v. Bek, 493 F.3d 790, 802 (7th Cir. 2007). A HIPAA qualified protective order limits the disclosure of protected medical information once it is produced in accordance with the Federal Rules of Civil Procedure. Reed v. Wexford Health Sources, Inc., No. 20-cv-01339-

---

[3] The court will address the plaintiff's motion to appoint counsel below.

7

SPM, 2021 WL 55778076, at *3 (S.D. Ill. Oct. 19, 2021). In essence, the law allows parties to exchange private healthcare information for litigation purposes while making sure, through the qualified protective order, that parties don't disclose that information to the public and to individuals other than those involved the lawsuit.

A party may move for a protective order under Federal Rule of Civil Procedure 26. The motion must certify that the movant has, in good faith, conferred or attempted to confer with affected parties to resolve the dispute without court action. Fed. R. Civ. P. 26(c)(1). Fuentes' motion does not certify that he conferred with the plaintiff before filing his motion and the court will therefore deny the motion without prejudice. If the defendants choose to refile their motion for entry of a HIPAA qualified protective order, they should demonstrate good cause for entry of the protective order and certify that they conferred with the plaintiff. See Fed. R. Civ. P. 26(c)(1).[4]

## VII. Plaintiff's Motion to Appoint Counsel (Dkt. No. 101)

In his response to Fuentes' motion for a protective order, the plaintiff filed a motion to appoint counsel. Dkt. No. 19. In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants

---

[4] The court notes that Fuentes' proposed order appears to satisfy the procedural requirements for a HIPAA qualified protective order because it closely tracks the Proposed HIPAA Qualified Protective Order used by the United States District Court for the Northern District of Illinois. See https://www.ilnd.uscourts.gov (last visited Dec. 6, 2022).

8

and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the

9

case requires a lawyer who specializes in a specific area of law. Id. The court should also consider how well the plaintiff articulated his case to the prospective lawyer. Id. Where a plaintiff "conveyed his situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has satisfied the first requirement of making a reasonable effort to find a lawyer on his own. Dkt. No. 101 at 2. Despite his concerns that he does not understand HIPAA law and Fuentes's motion for protective order,

10

however, the many pleadings and other documents the plaintiff has filed in this case show that he advocates for himself very well and that he understands the proceedings. The plaintiff is capable of continuing to engage in discovery with the defendants as well as responding to, or filing, a motion for summary judgment. The court will deny without prejudice the plaintiff's motion to appoint counsel.

**VIII. Discovery and Dispositive Motion Deadlines**

As stated above, Macias filed his answer to the amended complaint on December 6, 2022. Dkt. No. 112. The court will set new deadlines for the completion of discovery and for filing motions for summary judgment.

The court also notes that on August 1, 2022, the plaintiff filed a request for mediation. Dkt. No. 79. The court advises the parties that it will be more than happy to refer this case to a magistrate judge for mediation if *all* parties request mediation.

**IX. Conclusion**

The court **DENIES** the plaintiff's motions for default judgment. Dkt. Nos. 73, 92.

The court **DENIES** the plaintiff's motion to appoint court reporter. Dkt. No. 78.

The court **DENIES** the defendants' motion for sanctions. Dkt. No. 86.

The court **DENIES** the plaintiff's motion for temporary restraining order. Dkt. No. 87.

The court **GRANTS** the plaintiff's motion for leave to file amended brief. Dkt. No. 91.

The court **DENIES AS MOOT** defendant Macias's motion to quash plaintiff's first set of Requests for Admission and Requests for Production. Dkt. No. 99.

The court **DENIES WITHOUT PREJUDICE** defendant Fuentes's motion for protective order. Dkt. No. 100.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 101.

The court **ORDERS** that the parties must serve their discovery requests sufficiently early so that discovery is completed no later than **April 10, 2023** (that means that the parties must serve their requests at least sixty days before the April 10, 2023 deadline to give the opposing party enough time under the rules to respond by the deadline). The court **ORDERS** that parties may file motions for summary judgment, together with supporting materials, no later than the end of the day on **May 12, 2023**.

Dated in Milwaukee, Wisconsin this 9th day of January, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**